UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**CYNTHIA WRIGHT**,                         Case Number : 1:13 CV 741

     Plaintiff,

                                    Magistrate Judge James R. Knepp, II

     v.

**COMMISSIONER OF SOCIAL SECURITY**,

     Defendant.                         MEMORANDUM OPINION AND ORDER

## INTRODUCTION

Plaintiff Cynthia Wright seeks judicial review of Defendant Commissioner of Social Security's decision to deny disability insurance benefits ("DIB") and supplemental security income ("SSI"). The district court has jurisdiction under 42 U.S.C. § 405(g) and § 1383(c)(3). The parties have consented to the exercise of jurisdiction by the undersigned in accordance with 28 U.S.C. § 636(c) and Civil Rule 73. (Doc. 13). For the reasons given below, the Court affirms the Commissioner's decision denying benefits.

## PROCEDURAL BACKGROUND

Plaintiff filed applications for DIB and SSI on March 25, 2009, alleging disability since December 23, 2008, due to asthma, lower back pain, and affective disorders. (Tr. 116). Her claims were denied initially and on reconsideration. (Tr. 69, 73, 79, 82). Plaintiff requested a hearing before an administrative law judge ("ALJ"). (Tr. 89). At the hearing, Plaintiff, represented by counsel, and a vocational expert ("VE") testified. (Tr. 39). On May 26, 2011, the ALJ concluded Plaintiff was not disabled. (Tr. 15). Plaintiff's request for review was denied, making the decision of the ALJ the final decision of the Commissioner. (Tr. 1, 13); 20 C.F.R. §§

404.955, 404.981, 416.1455, 1481. On April 4, 2013, Plaintiff filed the instant case. (Doc. 1).

## FACTUAL BACKGROUND

### *Plaintiff's Background, Vocational Experience, and Daily Activities*

Plaintiff was 50 years old at the time of her alleged disability onset date. (Tr. 31). She has a high school education and past relevant work experience as a state tested nursing assistant ("STNA"). (Tr. 31, 44-45, 317, 716).

Plaintiff lived in a house with her husband. (Tr. 171). Concerning daily activities, Plaintiff did housework (with breaks) such as washing dishes, mopping, sweeping, and laundry; took care of a cat; maintained personal care except when required to lift her arms; prepared complete and frozen meals; drove a car; shopped for food or clothes weekly; read; watched television; went to church; visited her mother daily; and used a computer. (Tr. 48, 52-53, 172-75, 196-202, 320).

### *Medical Evidence*

Between 2000 and 2007, Plaintiff suffered three on-the-job lower back injuries caused by lifting heavy patients. (Tr. 273). On August 9, 2007, Plaintiff reported to the emergency room for exacerbation of chronic back pain. (Tr. 273). There, she received pain relieving medication and a prescription for Percocet then was discharged. (Tr. 273-74). Plaintiff fell in the snow in 2008, which she said forced her to stop working. (Tr. 45).

On December 6, 2008, Plaintiff was admitted to the hospital for left-sided chest pain and gastroesophageal reflux disease ("GERD"). (Tr. 304-05). Plaintiff began taking over-the-counter Prevacid which seemed to solve the problem. (Tr. 307).

2

On September 4, 2009, James Foy, Jr., D.C., performed a physical examination, which was normal aside from limited range of motion in Plaintiff's legs and right arm. (Tr. 346). This was the first time Dr. Foy made contact with Plaintiff since November 8, 2007. (Tr. 347).

X-rays of Plaintiff's right shoulder and lumbar spine taken in October 2009 were unremarkable. (Tr. 705-06).

Anil Pai, M.D., treated Plaintiff from December 8, 2009 through January 1, 2011, for chronic low back pain, degenerative joint disease, right shoulder pain, GERD, and depression. (Tr. 752-72). Dr. Pai prescribed pain medication, physical therapy, and home exercise. (*Id.*). During these visits, Plaintiff consistently complained of pain either "all over" or in her back, shoulder, or joints. (Tr. 752, 754, 756, 768-71). At times, especially toward the end of treatment, Plaintiff reported reduced pain with medication. (Tr. 752, 755, 758-59, 761-64, 767). One treatment note from May 10, 2010, indicated Plaintiff had recently been admitted for clinical chest pain, depression, and alcohol dependence. (Tr. 760).

In January 2011, Plaintiff began occupational therapy for her right shoulder. (Tr. 774-82). She went to three sessions where she practiced strategic stretches, strengthening, and pain management techniques and also complied with a home exercise program. As a result, Plaintiff's pain levels and range of motion improved. (Tr. 774, 776).

On January 18, 2011, Dr. Pai completed a treating source statement where she indicated Plaintiff would have either a good or fair ability to make occupational adjustments, except due to depression affecting social and cognitive functioning, and would have poor abilities to work in coordination with or proximity to others; deal with work stresses; complete a normal workday and work week without interruption from psychologically based symptoms; understand,

remember, and carry out complex job instructions; socialize; behave in an emotionally stable manner; relate predictably in social situations; and manage funds or schedules. (Tr. 748-49).

Concerning physical abilities, Dr. Pai indicated on February 1, 2011, that Plaintiff's abilities to lift, carry, stand, and walk were limited by right shoulder and knee pain. (Tr. 750). Plaintiff had no environmental restrictions, her ability to sit was not affected, and she could occasionally climb, stoop, crouch, kneel, crawl, push, and pull. (Tr. 750-51).

On June 14, 2011, Plaintiff was treated and released at the emergency room for a sprained shoulder and hip pain-contusion. (Tr. 799).

***State Agency Review***

On June 1, 2009, Eulogio Sioson, M.D., examined Plaintiff and noted Plaintiff had been unable to work as a nurse's assistant since 2003 due to medical problems, including asthma, chest pain, back and joint pain, and depression. (Tr. 307). Following physical examination, Dr. Sioson concluded Plaintiff had no specific work-related restrictions based on objective findings, but due to a limited range of motion from subjective pain, her abilities to walk, stand, sit, carry, and lift would be impaired, although she would still be able to do sedentary activities. (Tr. 308).

Psychologist Herschel Pickholtz, Ed.D., examined Plaintiff on June 16, 2009, where Plaintiff said she was unable to work due to arthritis in her shoulders, knees, and arms. (Tr. 316). At the time, Plaintiff was not receiving any psychiatric or psychological help and reported a history of alcohol and drug abuse, although she said she had been sober for two months. (Tr. 317). Plaintiff said she last worked in December 2008 as an STNA for one and half months but left due to back problems. (Tr. 317). She also worked as an STNA at one place for twelve years, but left because she "messed up". (Tr. 317). Plaintiff said she had good work evaluations and a good relationship with supervisors and coworkers. (Tr. 317). Dr. Pickholtz concluded Plaintiff

4

had mild limitations in all areas of work-related mental capabilities and assigned a global assessment of functioning ("GAF") score of 65.[1] (Tr. 321).

On July 17, 2009, Mel Zwissler, Ph.D., completed a psychiatric review technique and concluded Plaintiff had only a mild degree of functional limitation due to affective, personality, and substance addiction disorders. (Tr. 323-36).

Myong Cho, M.D., performed a physical residual functioning capacity ("RFC") assessment on August 25, 2009, where he opined Plaintiff could perform a range of light work. (Tr. 337-44). Specifically, Dr. Cho opined Plaintiff could lift and carry twenty pounds occasionally and ten pounds frequently; stand, walk, or sit for up to six hours in an eight-hour workday, push and pull with limitation with her upper extremities; climb, stoop, kneel, crouch, and crawl occasionally; and could not frequently reach overhead. (Tr. 338-40).

Dr. Sioson performed a second evaluation on October 19, 2009, where he concluded objective findings supported no specific work-related restrictions but if Plaintiff's limited range of motion due to severe pain was considered, work-related functions such as walking, standing, sitting, carrying, handling, and lifting would be significantly impaired precluding even sedentary activities. (Tr. 699-700).

On November 11, 2009, Jeff Rindsberg, Psy.D., performed a clinical interview to assess Plaintiff's mental status and current psychological functioning. (Tr. 715). Dr. Rindsberg noted

---

1. The GAF scale represents a "clinician's judgment" of an individual's symptom severity or level of functioning. American Psychiatric Association, *Diagnostic & Statistical Manual of Mental Disorders*, 32–33 (4th ed., Text Rev. 2000) (*DSM-IV-TR*). A GAF score between 61 and 70 indicates "some mild symptoms (e.g., depressed mood or mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy or theft within the household) but generally functioning pretty well, has some meaningful interpersonal relationships." *Id.* at 34.

there were no records available for review prior to the evaluation, so it was based "purely" on Plaintiff's self-reported symptoms and behavioral observations. (Tr. 715). Plaintiff reported a history of alcohol and drug abuse, noting her longest period of sobriety was for 31 days in June, 2009. (Tr. 716). She complained of depression and said she previously worked as a STNA for 31 years but had to stop in December 2008 due to drinking, back problems, and a fall which injured her shoulder. (Tr. 716). Plaintiff described her days as varied, averring she would sometimes stay in bed and other days would do household chores, socialize, cook, and drive. (Tr. 716-17). Dr. Rindsberg found two areas of difficulty for Plaintiff; major depressive episodes and alcohol abuse. (Tr. 718). He concluded Plaintiff's depression was "rather serious" in severity because she could become exceedingly violent and harmful toward others and would hardly get out of bed at times. (Tr. 718). He assigned a GAF of $50^2$ and found Plaintiff mildly impaired in ability to understand and follow instructions; moderately impaired in abilities to maintain attention and perform simple, repetitive tasks; and markedly impaired in abilities to relate to others and withstand the stress and pressures associated with day-to-day work activities. (Tr. 718).

On December 12, 2009, Kristen Haskins, Psy.D., reviewed Plaintiff's records and completed a mental RFC and psychiatric review technique. (Tr. 721). She concluded Plaintiff was not limited in most areas of functioning, except she was moderately limited in abilities to sustain concentration and persistence and interact appropriately with the public. (Tr. 722-23). Dr. Haskins also concluded Plaintiff was moderately limited in activities of daily living and maintaining social functioning and mildly limited in ability to maintain concentration,

---

2. A GAF score between 41 and 50 indicates "[s]erious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job.)" *DSM-IV-TR*, at 34.

persistence, or pace. (Tr. 735). She concluded Plaintiff was capable of performing a variety of moderately complex tasks in a setting that was not fast-paced, did not have stringent time or production requirements, allowed Plaintiff to work independently without over the shoulder supervision, had superficial relating, and did not require sustained periods of close focus or attention. (Tr. 724).

On January 31, 2010, J. McKenna, M.D., reviewed Plaintiff's records and concluded Plaintiff did not have an impairment or combination of impairments that met or equaled a listing and noted the inconsistencies between Plaintiff's physical examinations and level of cooperation during consultative examinations. (Tr. 739). Dr. McKenna also completed a physical RFC determination where she concluded Plaintiff could perform a range of medium work with occasional climbing, stooping, and crouching and avoidance of cold and concentrated exposure to odors, dusts, gases, and poor ventilation. (Tr. 741-47).

### ALJ Decision

The ALJ determined Plaintiff suffered from severe impairments including asthma, obesity, affective disorders, and substance use disorder in remission. (Tr. 20). Next, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or equaled a listed impairment. (Tr. 21). The ALJ found Plaintiff had the RFC to perform a range of light work except she was limited to lifting, carrying, and upward pulling of twenty pounds occasionally and ten pounds frequently; could stand, walk or sit for up to six hours in an eight-hour workday; was limited to occasional climbing of ramps, stairs, ladders, ropes, and scaffolds; must avoid concentrated exposure to extreme cold and fumes, odors, dusts, gases, poor ventilation, etc.; and required a work setting that was not fast-paced, did not have stringent time or production requirements, involved independent work without close supervision and only

superficial relating, and without the need for sustained periods of close focus and attention. (Tr. 23-24).

Considering Plaintiff's age, education, work experience, RFC, and VE testimony, the ALJ determined Plaintiff could work as a bench assembler, wire worker, and electrical worker. (Tr. 32). Thus, the ALJ determined Plaintiff was not disabled. (Tr. 32).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

## STANDARD FOR DISABILITY

Eligibility for DIB and SSI is predicated on the existence of a disability. 42 U.S.C. § 423(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less

8

than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process – found at 20 C.F.R. § 404.1520 – to determine if a claimant is disabled:

1. Was the claimant engaged in a substantial gainful activity?

2. Did the claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's RFC and can she perform past relevant work?

5. Can the claimant do any other work considering her RFC, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in steps one through four. *Walters*, 127 F.3d at 529. The burden then shifts to the Commissioner at step five to establish whether the claimant has the RFC to perform available work in the national economy. *Id.* The court considers the claimant's RFC, age, education, and past work experience to determine if the claimant could perform other work. *Id.* A claimant is only determined to be disabled if she satisfies each element of the analysis, including inability to do other work, and meets the duration requirements. 20 C.F.R. §§ 404.1520(b)-(f); 416.920(b)-(f); *see also Walters*, 127 F.3d at 529.

**DISCUSSION**

Plaintiff argues the ALJ did not properly weigh and evaluate the opinions of treating physician Dr. Pai and consultative examiners Drs. Sioson and Rindsberg. (Doc. 15, at 11-15). Plaintiff's argument implicates the treating physician rule.

***Treating Physician Rule***

9

Generally, the medical opinions of treating physicians are afforded greater deference than those of non-treating physicians. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007); *see also* SSR 96-2p, 1996 WL 374188. "Because treating physicians are 'the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone,' their opinions are generally accorded more weight than those of non-treating physicians." *Rogers*, 486 F.3d at 242 (quoting 20 C.F.R. § 416.927(d)(2)). A treating physician's opinion is given "controlling weight" if it is supported by "medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record." *Id.* The ALJ must give "good reasons" for the weight given to a treating physician's opinion. *Id.* A failure to follow this procedural requirement "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Id.* (citing *Rogers*, 486 F.3d at 243). Accordingly, failure to give good reasons requires remand. *Id.* at 409–410.

"Good reasons" are reasons "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Rogers*, 486 F.3d at 242 (quoting SSR 96-2p, 1996 WL 374188, at *4). "Good reasons" are required even when the conclusion of the ALJ may be justified based on the record as a whole. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). "If the ALJ does not accord the opinion of the treating source controlling weight, it must apply certain factors" to assign weight to the opinion. *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 660 (6th Cir. 2009) (citing 20 C.F.R. § 404.1527(d)(2)). These factors include the length of treatment

10

relationship, the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and the specialization of the treating source. *Id.*

Under the regulations, a "treating source" includes physicians, psychologists, or "other acceptable medical source[s]" who provide, or have provided, medical treatment or evaluation and who have, or have had, an ongoing treatment relationship with the claimant. 20 C.F.R. §§ 404.1502; 416.902. A medical provider is *not* considered a treating source if the claimant's relationship with him or her is based solely on the claimant's need to obtain a report in support of their claim for disability. §§ 404.1502; 416.902 (emphasis added). Non-treating sources are physicians, psychologists, or other acceptable medical sources who have examined the claimant but do not have, or did not have, an ongoing treatment relationship with them. §§ 404.1502; 416.902. This includes a consultative examiner. §§ 404.1502; 416.902.

Last in the medical source hierarchy are non-examining sources. These are physicians, psychologists, or other acceptable medical sources who have not examined the claimant, but review medical evidence and provide an opinion. §§ 404.1502; 416.902. This includes state agency physicians and psychologists. §§ 404.1502; 416.902. The ALJ "must consider findings and other opinions of [s]tate agency medical and psychological consultants . . . as opinion evidence", except for the ultimate determination about whether the individual is disabled. §§ 404.1527(e)(2)(ii); 416.927.

Dr. Pai

First, Plaintiff argues the ALJ did not provide good reasons for affording little weight to treating physician Dr. Pai's treating source statements. (Doc. 15, at 11).

In the relevant opinions, Dr. Pai determined Plaintiff would have either a good or fair ability to make occupational adjustments, except due to depression affecting social and cognitive functioning. (Tr. 748-49). Concerning physical abilities, Dr. Pai indicated Plaintiff's abilities to lift, carry, stand, and walk were limited by right shoulder and knee pain. (Tr. 750). Plaintiff's ability to sit was not affected, but Plaintiff could only occasionally climb, stoop, crouch, kneel, and crawl due to back pain. (Tr. 750). Further, Plaintiff could occasionally push and pull and had no environmental restrictions. (Tr. 751).

In his determination, the ALJ expressly identified Dr. Pai as Plaintiff's treating source or primary care physician. (Tr. 27, 29). Then, the ALJ afforded Dr. Pai's February opinion, concerning Plaintiff's physical abilities, little weight because it conflicted with the medical evidence of record including lack of radiological support and conservative treatment history and it was conclusory, unsupported by Dr. Pai's own medical records, and opined on matters outside of Dr. Pai's specialty as a general practitioner (i.e. not rheumatology). (Tr. 27). Regarding the January opinion on mental functioning, the ALJ afforded the opinion little weight because the opinion conflicted with the medical evidence of record including routine and conservative treatment for psychological symptoms and it was conclusory, not supported by Dr. Pai's own treatment records, and outside Dr. Pai's specialty as a general practitioner (i.e. not psychiatry or psychology). (Tr. 29). 20 C.F.R. § 404.1527(d)(2)

Upon review, the ALJ properly evaluated and assigned weight to each of Dr. Pai's opinions. Indeed, the ALJ cited to the regulatory factors including supportability, consistency, nature of relationship, and specialty of treating source. 20 C.F.R. § 404.1527(d)(2). To the extent Plaintiff takes issue with the fact the ALJ did not exhaust the list of regulatory factors, her

12

argument is without merit as the ALJ is under no such obligation. *Francis v. Comm'r of Soc. Sec. Admin.*, 414 F. App'x 802, 804-05 (6th Cir. 2011) (noting the "good reasons" rule does not require an "exhaustive factor-by-factor analysis").

Plaintiff takes issue with the fact the ALJ did not consider that Dr. Pai's opinion was consistent with Dr. Sioson's. (Doc. 15, at 12). However, the ALJ is simply required to comply with applicable rules and regulations and support his opinion with substantial evidence, not to discuss each piece of evidence which would be contrary to his decision. *See Karger v. Comm'r of Soc. Sec.*, 414 F. App'x 739, 753 (6th Cir. 2011) (An "ALJ is not required to discuss every piece of medical opinion evidence"). Furthermore, the ALJ provided a lengthy explanation of Dr. Sioson's opinion, finding it was also unsupported by objective evidence. (Tr. 26). Moreover, Dr. Sioson himself opined Plaintiff would have no specific restriction to work-related activities based on objective findings. (Tr. 307, 699).

Next, Plaintiff argues the ALJ failed to "articulate exactly how Dr. Pai's opinion was not supported by her treatment records given Dr. Pai's repeated notes regarding pain and depression and the fact that she prescribed muscle relaxers and antidepressant medication." (Doc. 15, at 12). However, as the Commissioner points out, the ALJ "explicitly discussed that Dr. Pai's treatment notes revealed the absence of any x-rays, MRIs, or other reports showing any abnormalities, and that Plaintiff followed a routine and conservative course of treatment." (Doc. 16, at 15, *referring to* Tr. 27); *Jones*, 336 F.3d at 477 (the court cannot overturn "so long as substantial evidence . . . supports the conclusion reached by the ALJ."). Thus, this argument is not well-taken.

For the above-state reasons, the ALJ complied with his regulatory obligation to provide good reasons to afford treating physician Dr. Pai's opinions little weight.

13

Drs. Sioson and Rindsberg

Next, Plaintiff argues the ALJ did not provide good reasons for assigning little weight to the opinions of consultative examiners Drs. Sioson and Rindsberg. (Doc. 15, at 13).

Regarding Dr. Sioson, Plaintiff takes issue with the fact the ALJ afforded great weight to those portions of Dr. Sioson's opinion which were based on objective evidence, but little weight to the those portions of the opinion which were based on subjective evidence. (Doc. 15, at 13-14). Plaintiff accuses the ALJ of "cherry pick[ing]" portions of the evidence which support his decision. (Doc. 15, at 14). However, the ALJ is permitted to treat different portions of a medical source statement separately, so long as he provides good reasons for the respective weight afforded. *Rogers*, 486 F.3d at 242; SSR 96-5p, 1996 WL 374183, at *4.

In this case, the ALJ afforded little weight to the portions of Dr. Sioson's opinions which were expressly based on subjective findings because they were inconsistent with other evidence in the record, which demonstrated an improvement in symptoms with medication, and were based on less-than-credible allegations of pain. (Tr. 25-26). Notably, Plaintiff does not challenge the ALJ's adverse credibility determination. Further, as the ALJ noted, following physical examination, Dr. Sioson concluded there were no objective findings which would support any work-related restrictions. (Tr. 25-26). Thus, the ALJ provided good reasons for his treatment of Dr. Sioson's subjectively-based opinion by considering its consistency and supportability. 20 C.F.R. § 404.1527(d)(2).

To the extent Plaintiff argues substantial evidence supports finding medication did not improve Plaintiff's symptoms, that argument is misplaced. If substantial evidence supports the Commissioner's decision, this Court will defer to that finding "even if there is substantial

14

evidence in the record that would have supported an opposite conclusion." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir.1997)). Upon review, there is substantial evidence in the record to support the ALJ's finding that medication and occupational therapy improved symptoms. (Tr. 51, 752, 755, 758-59, 761-64, 767, 774, 776). Thus, this argument is not well-taken.

Turning to Dr. Rindsberg's opinion, Plaintiff argues the ALJ should have afforded it more weight than the non-examining consultant and also argues the ALJ provided insufficient reasons for affording little weight to Dr. Rindsberg's opinion. (Doc. 15, at 15). For the following reasons, Plaintiff's arguments are without merit.

"[T]he opinions of non-examining state agency medical consultants have some value and can, under some circumstances, be given significant weight." *Douglas v. Comm'r of Soc. Sec.*, 832 F.Supp. 2d 813, 823-24 (S.D. Ohio 2011). This occurs because the Commissioner views such medical sources "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act." *Id.*; § 416.927(d),(f); SSR 96–6p at *2–3. "Consequently, opinions of one-time examining physicians and record-reviewing physicians are weighed under the same factors as treating physicians including supportability, consistency, and specialization." *Douglas*, 832 F.Supp.2d at 823-24.

Here, The ALJ afforded great weight to non-examining state agency consultant Dr. Haskin's opinion because it was consistent with the medical evidence of record and Dr. Haskins had the benefit of Plaintiff's longitudinal record. (Tr. 29). Therefore, the ALJ commented on the consistency and supportability of Dr. Haskin's opinion.

15

Conversely, the ALJ afforded Dr. Rindsberg's opinion little weight because it was based on Plaintiff's unsupported subjective complaints of symptoms and Dr. Rindsberg's one-time examination of Plaintiff. (Tr. 18). Indeed, Dr. Rindsberg had no records available for review prior to the evaluation, so, by its own terms, the opinion was based "purely" on Plaintiff's self-reported symptoms and Dr. Rindsberg's behavioral observations. (Tr. 715). The ALJ found this foundation was problematic considering his determination that Plaintiff's allegations were less than credible. (Tr. 28). Again, Plaintiff does not challenge the ALJ's adverse credibility determination. The ALJ provided good reasons for his treatment of Dr. Rindsberg's opinion by considering its supportability and the nature of Dr. Rindsberg's treatment relationship with Plaintiff. 20 C.F.R. § 404.1527(d)(2). It was not error for the ALJ to afford greater weight to Dr. Haskin's opinion than to consultative examiner Dr. Rindsberg because the ALJ provided good reasons for the respective weight afforded.

To the extent Plaintiff argues the ALJ's decision is not supported by substantial evidence, the undersigned finds that argument not well-taken for the reasons stated by the ALJ and the Commissioner. (Tr. 15-38; Doc. 16). In short, Plaintiff was able to perform significant activities of daily living including cooking, cleaning, shopping, and laundry, visiting her mother, and going to church. (Tr. 172-75, 196-202, 320). Further, Plaintiff had no documented difficulty in concentration, persistence, and pace; underwent routine and conservative treatment, which she at times indicated was successful; and her allegations of disabling pain were less than credible. (Tr. 30-31, 51, 752, 755, 758-59, 761-64, 767, 774, 776). Moreover, there is scant objective evidence which supports Plaintiff's allegations; conversely, several physicians found only mild to moderate limitations in work-related capabilities. (Tr. 321, 323-36, 338-40, 346, 705-06, 724,

16

741-47). Upon review of the record, the undersigned finds the ALJ accurately portrayed the record and supported his determination with substantial evidence.

### CONCLUSION

Following review of the arguments presented, the record, and the applicable law, the Court finds the Commissioner's decision denying DIB and SSI benefits applied the correct legal standards and is supported by substantial evidence. Therefore, the decision of the Commissioner is affirmed.

IT IS SO ORDERED.

 s/James R. Knepp II
United States Magistrate Judge

17